IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GALVIN ELON MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0008-WS-M |
| | ) |
| AMEC FOSTER WHEELER, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 20). The parties have filed briefs and/or evidentiary materials in support of their respective positions, (Docs. 20, 24, 25),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

**BACKGROUND**

According to the *pro se* complaint, (Doc. 1), the plaintiff was employed by the defendant for about one week in April 2015. The defendant and the Court construe the complaint as asserting two claims, both under Title VII: one for

---

[1] The plaintiff submitted only a two-page, unsworn letter in opposition to the defendant's motion. "Unsworn statements do not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tartangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (internal quotes omitted); *accord Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1248 n.8 (11th Cir. 2009); *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015) (same rule applies under the current version of Rule 56). Because the plaintiff's letter is unsworn, he cannot rely on it to defeat summary judgment. But because parties may make binding admissions in their unsworn briefs, *e.g., Shuler v. Ingram & Associates*, 441 Fed. Appx. 712, 719 (11th Cir. 2011), material in the plaintiff's response may be used against him. Nevertheless, the allegations, arguments and evidence are such that the result of the defendant's motion would be the same even had the plaintiff submitted a sworn response.

hostile work environment and one for retaliation. The plaintiff in his response asserts no other.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Hostile Work Environment.**

The plaintiff's claim is based on being touched by a male co-worker twice on a single work shift. The first time, the co-worker bumped or tapped the plaintiff's buttocks with his hand one time while walking past the plaintiff; the incident lasted between half a second and a full second. (Doc. 20-2 at 8-9). Three or four hours later, as the co-worker walked hurriedly past the plaintiff, he thumped the plaintiff's crotch; again, the incident lasted between half a second and a full second, and the co-worker went right back upstairs. (*Id*. at 7, 15-17).

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

The fourth element of a claim for sexual harassment is that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004). The defendant argues that the plaintiff cannot satisfy this test.

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component. [citation omitted] In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotes omitted). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotes omitted).

The plaintiff worked a total of four days and experienced two incidents of harassing activity. While "fifteen separate instances of harassment over the course of four months," or roughly one incident a week, is "not infrequent," *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000), the plaintiff has identified no authority for the proposition that a plaintiff can satisfy the frequency criterion with only one or two incidents simply because he was employed a short time. Even assuming the plaintiff has crossed some relevant threshold of frequency, "show[ing] frequent conduct … does not compensate for the absence of the other factors." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc).

In *Gupta v. Florida Board of Regents*, 212 F.3d 571 (11th Cir. 2000), the two "most serious" incidents involved the harasser putting his hand on the plaintiff's thigh (partly on the inside of her thigh) and lifting the hem of her dress about four inches. *Id.* at 579, 585. "Each incident was only momentary, and

4

neither was coupled with any verbal suggestions or advances." *Id*. at 585. The Eleventh Circuit ruled the conduct was not severe. *Id*. at 586. In *Mendoza*, the plaintiff complained that the harasser "rubbed his hip against [hers] while touching her shoulder and smiling," 195 F.3d at 1247; the Eleventh Circuit held this was not severe conduct. *Id*. at 1249. In *Lockett v. Choice Hotels International, Inc*., 315 Fed. Appx. 862 (11th Cir. 2009), the harasser tried to hug the plaintiff and, on another occasion, "touched her bottom quickly." *Id*. at 863. The Eleventh Circuit declared that the "two incidents of brief touching fall below the minimum level of severity … needed to establish sexual harassment." *Id*. at 866. In light of these authorities, the momentary, isolated conduct of the co-worker in this case, while unwelcome and unacceptable in a civilized workplace, cannot be construed as severe within the contemplation of Title VII.

In each of the cases cited in the preceding paragraph, the Eleventh Circuit ruled that the conduct was not threatening or humiliating. *Gupta*, 212 F.3d at 586; *Mendoza*, 195 F.3d at 1248-49; *Lockett*, 315 Fed. Appx. at 866. That being so, the conduct here cannot be considered as threatening or humiliating.

Interference with job performance "involves both a subjective and objective inquiry." *Gupta*, 212 F.3d at 586. That is, the plaintiff must subjectively have experienced interference with his job performance, and the conduct must be such that it "would … have interfered with a reasonable employee's performance of her job." *Id*. The plaintiff concedes that the two fleeting incidents (involving a co-worker not working in his area but simply passing by) did not interfere with his job performance, and he continued working after each. (Doc. 20-2 at 13, 15, 17-18, 20).

As in *Mendoza*, three of the four factors for gauging severity or pervasiveness "are clearly absent." 195 F.3d at 1248. As in *Mendoza*, "to the extent [the plaintiff] showed frequent conduct, the frequency of it does not compensate for the absence of the other factors." *Id*. As in *Mendoza* (and the other cited cases), such a showing is inadequate to survive summary judgment.

5

## II. Retaliation.

The facts regarding the plaintiff's retaliation claim are more detailed, but they are equally uncontroverted. In April 2015, the defendant was working on two brief construction projects at a Georgia-Pacific ("GP") facility during a mill outage. A staffing agency provided workers for one project, while the defendant did its own short-term hiring for the other. The plaintiff was referred by the staffing agency to work on the project it was staffing but, when he showed up at the GP facility on April 15, 2015, he was inadvertently directed to the other project, where he was put to work on the night shift without confirming whether he was at the correct site (apparently on the assumption he had been hired during the day shift, as was the defendant's practice on this project).

The incidents described in Part I occurred during the April 18-19 night shift. When the plaintiff arrived for his next shift on the evening of April 19, he threatened to stab and kill the co-worker if he showed up for work. This statement was made to the GP safety representative and in the presence of two of the defendant's representatives. The GP representative advised the defendant's representatives that, due to this threat, the plaintiff was no longer welcome on GP property, effectively ending his work on the project. The plaintiff was sent home while the defendant investigated his complaint of sexual harassment.

The plaintiff then contacted the staffing agency to ask for his paycheck; he learned he had not reported to the project being staffed by the agency and so did not show up on the agency's list of sign-ins, as necessary to be eligible for payment by the agency. The staffing agency informed the defendant of the mix-up. On approximately April 21, 2015, the plaintiff returned to the GP facility to sign paperwork for the defendant,[3] which paperwork was necessary in order to pay

---

[3] This paperwork included an employment application, an employee record form, a W-4 form, an A4 form, and acknowledgments of receipt of the defendant's employee handbook, code of business conduct and other policies.

6

him for the few days he had worked on the GP project.  The mill outage ended on April 22, 2015.  The defendant paid the plaintiff through that date, even though he did not return to work after threatening extreme violence on April 19.

The plaintiff asserts that the defendant "called me into [sic] hire me after I reported the claim" but thereafter "never called me back to work."  (Doc. 24 at 1).

Similar to discrimination cases, a retaliation case not based on direct evidence follows a burden-shifting format.  First, the plaintiff must make out a prima facie case.  Second, the defendant must produce evidence of one or more legitimate, non-retaliatory reasons for the plaintiff's adverse treatment.  Third, the plaintiff must show that the defendant's proffered reasons are a pretext for prohibited retaliatory conduct.  *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

The Court assumes without deciding that the plaintiff could establish a prima facie case.  The defendant identifies its legitimate, non-discriminatory reason for not calling the plaintiff back to work after April 22, 2015 as being that the plaintiff was no longer employed, his employment having ended along with the mill outage for which he was employed.  This is a legally sufficient reason for failing to call the plaintiff back to work, and it is supported by record evidence.  *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981) (discussing requirements for a legitimate, non-discriminatory reason).

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination."  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotes omitted).  The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse

action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

The plaintiff, however, has identified no evidence of his own, and no weaknesses or implausibilities in the defendant's evidence, that could call its articulated reason into question. On the contrary, the plaintiff admits he was hired only for the GP job, (Doc. 24 at 1), that the job ended on April 22, 2015, (Doc. 20-2 at 44), and that, when he filled out the defendant's paperwork on or about April 21, he was told he was doing so in order that the defendant could process his pay. (*Id*. at 38). The plaintiff also admits that, when the defendant contacted him shortly after April 22 to continue its investigation of his complaint of sexual harassment and the plaintiff asked when he was coming back to work, he was told the project was over. (*Id*. at 51-52). Finally, the plaintiff has failed to explain why, if the defendant intended to deny him work in retaliation for complaining of sexual harassment, it would have him complete employment paperwork (the conduct he says made him an employee entitled to continued work) only two days after he complained.[4]

In sum, the defendant has met its intermediate burden, and the plaintiff has failed to create a genuine issue as to whether the defendant's articulated reason is a pretext for unlawful retaliation.

---

[4] The defendant's representative(s) involved in having the plaintiff complete the paperwork were at that time fully aware of the plaintiff's complaint.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is granted.  Judgment shall be entered accordingly by separate order.[5]

DONE and ORDERED this 10th day of February, 2017.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The defendant says that its correct name is Amec Foster Wheeler, Kamtech, Inc. (Doc. 20 at 1).  The Court cannot unilaterally alter the style of the action as established by the complaint, but it will enter judgment in favor of the defendant both as named in the complaint and as it identifies its name.